# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | |
| v. ) | |
| ) | Criminal Action No. 10-51-09 (RMC) |
| **ROBERT SMITH,** ) | |
| ) | |
| **Defendant.** ) | |

# MEMORANDUM OPINION

Defendant Robert Smith pleaded guilty via a Federal Rule of Criminal Procedure 11(c)(1)(C) agreement to participation in a criminal drug conspiracy and was sentenced to the agreed-upon term of 156 months' incarceration. After his sentencing, the offense level under the United States Sentencing Guidelines for the crime to which he pleaded guilty was lowered by two levels. Mr. Smith moved this Court to lower his sentence, which the Court denied because his sentence was "based on an agreed plea under Federal Rule of Criminal Procedure 11(c)(1)(C) and not on the Guidelines." That decision has now been reversed by the D.C. Circuit, due to the intervening Supreme Court decision in *Hughes v. United States*, 138 S. Ct. 1765 (2018), which held that a sentence based on a Rule 11(c)(1)(C) plea is generally "based on" the Guidelines and may be reduced due to a change in the underlying Guidelines. Thus, the case was remanded to this Court to reconsider its decision not to grant Mr. Smith's motion for a reduction in sentence. Having reviewed the submissions by the United States and Mr. Smith, the Court will grant Mr. Smith's motion to reduce his sentence. Mr. Smith's sentence will be modified to 135 months' incarceration, the mid-point of the new Guidelines range, with credit for time served.

1

I. BACKGROUND

**A. The Offense**

On March 10, 2010, Mr. Smith and 12 others were indicted for a conspiracy to sell phencyclidine (PCP), heroin, powder cocaine, and cocaine base in Washington, D.C. and Maryland. Indictment [Dkt. 3]. Count One of the Indictment charged Mr. Smith and others with Conspiracy to Distribute and Possess With Intent to Distribute PCP, Heroin, Cocaine, and Cocaine Base in violation of 21 U.S.C. § 846 and Count Three charged Mr. Smith with Unlawful Possession With Intent to Distribute PCP in violation of 21 U.S.C. § 841(a)(1) & (b)(1)(C). *Id*. On September 10, 2010, a Grand Jury returned a Superseding Indictment that charged Mr. Smith with:

> Count 1: Conspiracy to Distribute and Possess With Intent to Distribute PCP, Heroin, Cocaine, Cocaine Base, and Marijuana in violation of 21 U.S.C. § 846;
>
> Count 2: Conspiracy to Participate in a Racketeer Influenced Corrupt Organization in violation of 18 U.S.C. § 1962(d); and
>
> Count 24: Unlawful Possession With Intent to Distribute PCP, in violation of 21 U.S.C. § 841(a)(1) & (b)(1)(C).

Superseding Indictment [Dkt. 88].

The indictments arose from an FBI investigation that started in 2009, following the murder of a witness in a D.C. Superior Court case. Between December 1, 2009 and March 10, 2010, the FBI intercepted over 3,000 telephone calls and surveilled defendant Mark Pray and his drug-distributing co-conspirators, including Mr. Smith. *See* Final Presentence Investigation Report (PSR) [Dkt. 203] ¶¶ 22-23. The Pray Drug Conspiracy was involved in the distribution of large quantities of PCP, heroin, cocaine, cocaine base, and marijuana. *Id*. ¶ 22. Members of the conspiracy carried firearms while participating in drug sales and also used violence or threats of violence to further and to protect the conspiracy. *Id*.

Mr. Smith was involved in the Pray Drug Conspiracy from some time in 2009 until March 11, 2010. *Id.* ¶ 27. His role was to sell PCP to customers and users in the Barry Farms neighborhood of Washington, D.C. *Id.* Mr. Smith was not alleged to have been involved in any violence committed by the Pray Drug Conspiracy and was not alleged to have possessed a gun during his sales of PCP.

On March 25, 2011, Mr. Smith pleaded guilty under Federal Rule of Criminal Procedure 11(c)(1)(C)[1] to Count 2 of the Superseding Indictment, which charged him with Conspiracy to Participate in a Racketeer Influenced Corrupt Organization (RICO) in violation of 18 U.S.C. § 1962(d). Plea Agreement [Dkt. 151]. Mr. Smith admitted that his relevant conduct involved at least one but less than three kilograms of PCP. *Id.* ¶ 2; *see also* Factual Proffer [Dkt. 152] at ¶ 9. The parties agreed on a sentence of 156 months. Plea Agreement at ¶ 5. The plea was "wired to," *i.e.* conditioned upon, pleas by co-defendants Charles Wade, Robert McMillan, and Herman Williams, who were scheduled to go to trial with Mr. Smith. *Id.* ¶ 4.

"With respect to drug-trafficking offenses, the [United States] Sentencing Guidelines establish a defendant's base offense level according to the type and weight of the drug." *Dillon v. United States*, 560 U.S. 817, 821 (2010) (citing USSG § 2D1.1(a), (c)). Mr. Smith's relevant conduct included at least one kilogram of PCP, which resulted in a base offense level of 32 under United States Sentencing Guideline (USSG) § 2D1.1. After a three-level reduction for early acceptance of responsibility under USSG § 3E1.1, Mr. Smith's total offense

---

[1] In a plea under Rule 11(c)(1)(C), "the Government and a defendant 'agree that a specific sentence or sentencing range is the appropriate disposition of the case . . . .'" *Hughes*, 138 S. Ct. at 1773. Such a plea may be accepted or rejected by a judge. If accepted, the judge must sentence the defendant according to the terms of the plea. If rejected, the defendant has the choice to withdraw his plea and go to trial, negotiate further, or maintain the plea and accept the judge's alternative sentence. Fed. R. Crim. P. 11(c)(3)(A), (c)(5)(B).

level was 29. PSR ¶¶ 49-58. Mr. Smith's criminal record placed him in Criminal History Category V, *id*. ¶ 67, and thus his Guideline range was 140 to 175 months. *Id*. ¶ 111. The Court accepted the Rule 11(c)(1)(c) plea and, on August 9, 2011 and sentenced Mr. Smith accordingly to a term of imprisonment of 156 months and 60 months of supervised release. Judgment [Dkt. 285].

B. **Procedural Posture**

Thereafter, the Sentencing Commission amended the Guidelines and "reduced the base offense level by two levels for most drug offenses." *Hughes,* 138 S. Ct. at 1774 (citing USSG App. C, Amdt. 782 (Supp. Nov. 2012-Nov. 2016)). Amendment 782 was later made retroactive "for defendants who . . . already had been sentenced under the higher offense levels." *Id*. (citing USSG, Amdt. 788). Mr. Smith moved for a reduction in his sentence under Amendments 782 and 788 and 18 U.S.C. § 3582(c)(2).[2] First Mot. to Reduce Sentence [Dkt. 541]; FPD Mot. to Reduce Sentence [Dkt. 542].[3] This Court denied his motion, finding that Mr. Smith's sentence was based on an agreed-upon plea under Rule 11(c)(1)(C), in the nature of a contract, and not on a sentencing range from the Guidelines so that he was not eligible for a sentence reduction. Order [Dkt. 560]. Mr. Smith appealed. In the meantime, the Supreme Court had issued its decision in *Hughes*, affirmatively answering the question of whether "a defendant

---

[2] [I]n the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission . . . , the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(2).

[3] The Federal Public Defender appeared and filed briefs on Mr. Smith's behalf in both the initial and remanded proceedings.

who enters into a Fed. R. Crim. P. 11(c)(1)(C) plea agreement is generally eligible for a sentence reduction if there is a later, retroactive amendment to the relevant Sentencing Guidelines range." *Hughes*, 138 S. Ct. at 1772. On Mr. Smith's appeal, the D.C. Circuit emphasized that the Guidelines are the "starting point for every sentencing calculation in the federal system," including most sentences in accord with Rule 11(c)(1)(C) pleas. *United States v. Smith*, 896 F.3d 466, 470-71 (D.C. Cir. 2018) (quoting *Hughes*, 138 S. Ct. at 1775); *but see Koons v. United States*, 138 S. Ct. 1783, 1789 (2018) (no reduction when sentences are not based on Guidelines, but instead dictated by statutory mandatory minimum sentences). The Circuit remanded for "an individually tailored determination of whether resentencing is warranted in this case." *Smith*, 896 F.3d at 475 (citing *Dillon*, 560 U.S. at 825).

On remand, Mr. Smith renewed his Motion for a Reduced Sentence and both the government and counsel for Mr. Smith submitted memoranda in aid of sentencing. *See* Second Mot. to Reduce Sentence [Dkt. 600]; Mem. in Opp'n (Gov't Mem.) [Dkt. 601]; Mem. in Supp. (Smith Mem.) [Dkt. 602]; Reply [Dkt. 603]. The matter is ripe for consideration.

## II. LEGAL STANDARD

Federal courts may not revise or modify a sentence once it has been imposed unless one of a limited number of exceptions applies. *See* 18 U.S.C. § 3582(c). As indicated above, one of those circumstances is when the Sentencing Commission has retroactively lowered the applicable Guidelines range. *Id*. § 3582(c)(2); *see also Dillon*, 560 U.S. at 824. Under this exception, a district court has discretion to reduce the sentence it originally imposed after considering the sentencing factors in 18 U.S.C. § 3553(a) and the applicable policy statement in U.S.S.G. § 1B1.10. *See Dillon*, 560 U.S. at 827-30. Section 3582(c)(2) "unambiguously grants discretionary authority to the district court" when determining if a sentence reduction is

5

warranted. *United States v. Lafayette*, 585 F.3d 435, 439 (D.C. Cir. 2009). Reconsideration of a sentence due to a change in the Guidelines does not constitute a full resentencing and, therefore, "the defendant's presence is not required." *United States v. Galaviz*, 183 F. Supp. 3d 103, 106 (D.D.C. 2016) (citing Fed. R. Crim. P. 43(b)(4)). Notably, *Dillon* instructed that "§ 3583(c)(2) does not authorize a sentencing or resentencing proceeding. Instead, it provides for the 'modification of a term of imprisonment' by giving courts the power to 'reduce' an otherwise final sentence in circumstances specified by the Commission." *Dillon*, 560 U.S. at 825. Further, *Dillon* outlined a two-step inquiry under §3583(c)(2): "[a] court must first determine that a reduction is consistent with [USSG] § 1B1.10 before it may consider whether the authorized reduction is warranted, either in whole or in part, according to the factors set forth in § 3553(a)." *Id.* at 826.

Under § 3553(a), a court must "impose a sentence sufficient, but not greater than necessary" to accomplish the goals of sentencing, which include "to reflect the seriousness of the offense," "to promote respect for the law," "to provide just punishment for the offense," "to afford adequate deterrence to criminal conduct," and "to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a). In determining a sentence, the court considers "the nature and circumstances of the offense," "the history and characteristics of the defendant," the sentencing range established by the Guidelines, "any pertinent policy statement" from the Sentencing Commission, and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." *Id.*; *see also United States v. Booker*, 543 U.S. 220 (2005) (making the Guidelines advisory); *Kimbrough v. United States*, 552 U.S. 85 (2007). The Guidelines should be treated as "the starting point and the initial benchmark" in sentencing. *Gall v. United States*, 552 U.S. 38, 49 (2007).

### III. ANALYSIS

USSG Amendment 782, made retroactive and applicable to Mr. Smith by Amendment 788, clearly passes the first hurdle of the two-step *Dillon* analysis, as the D.C. Circuit already held. *Smith*, 896 F.3d at 470-73. The two-level reduction of his offense level authorized by the Sentencing Commission would reduce Mr. Smith's total offense level to 27. His criminal history category of V remains unchanged. Under the 2011 Guidelines, the applicable range becomes 120 to 150 months.[4] Mr. Smith argues that his sentence should be reduced to a sentence within the amended Guidelines range that is proportionate to the 156 months (from a range of 140-175 months) originally imposed, *i.e.*, that his sentence should be reduced to a term of 134 months. Smith Mem. at 2.

Mr. Smith argues that it is consistent with the intention of the Sentencing Commission in reducing the applicable offense level, and reasonable in light of the factors in § 3553(a), to reduce his sentence to 134 months. The government does not address the original negotiated sentence of 156 months in the Rule 11(c)(1)(C) plea, but focuses on the nature and circumstances of the offense and what it believes are the relevant history and characteristics of Mr. Smith.

**A. The Nature and Circumstances of the Offense**

The Drug Conspiracy led by Mark Pray was a wide and sweeping enterprise focused on the sale and distribution of multiple illegal drugs in D.C. and Maryland, including PCP. To ensure the success of the enterprise, its members engaged in a variety of illegal acts, including violence such as murder and robbery. Mr. Smith himself sold PCP and conspired in

---

[4] The Court notes that the applicable Guidelines range is the same in the 2018 Guidelines Manual applicable today as it was in the 2011 Guidelines Manual.

the drug distribution but "had little to no knowledge of the murders committed by other members of the Pray Drug Organization." *Smith*, 896 F.3d at 474 (reviewing the District Court findings at Mr. Smith's original sentencing). Mr. Smith was scheduled to go to trial with co-defendants Charles Wade, Robert McMillan, and Herman Williams. To avoid the risks and cost of trial (the usual trade-off for the government), a "wired" plea was offered to all four co-defendants. Nonetheless, the evidence (as shown in a subsequent trial) was strong and the government believed in its case. Therefore, while the terms of the individual plea agreements varied, unless each man agreed to enter a plea, a trial was inevitable and no deal would be made with any one of them. Among the defendants, Mr. Smith's criminal conduct was distinct. Each of his trial co-defendants plead guilty to, or admitted conduct concerning, firearms offenses and/or attempted witness tampering to further support the conspiracy. Mr. Smith sold PCP. The Court does not discount the damage PCP distribution does to a community and the dangers that it poses for users. There is no doubt that the distribution of PCP, even without a gun or overt violence, is itself a serious offense. Mitigating that seriousness is that Mr. Smith was not a leader, manager, or supervisor in the Pray Drug Conspiracy and was not involved in any violence.

The government urges the Court to find Mr. Smith's circumstances comparable to *United States v. Butler*, 130 F. Supp. 3d 317 (D.D.C. 2015) and *United States v. Galaviz*, 183 F. Supp. 3d 103 (D.D.C. 2016) (*Galaviz I*), *affirmed* 892 F.3d 378 (D.C. Cir. 2018) (*Galaviz II*), in which reductions were denied despite the Amendments. However, both cases had highly relevant and distinguishable features. In *Butler*, both defendants seeking a sentence reduction were "essential and high-ranking" members of the relevant drug conspiracy. *Butler*, 130 F. Supp. 3d at 318; *see also id*. at 323 ("Defendants were critical to the design and execution of a dominant, enduring, and citywide drug operation."). Defendant Butler was one of three people

8

who "bore primary responsibility for maintaining and directing the organization" and Defendant Jones was "a crucial participant" as one of the organizations four "enforcers." *Id*. at 318. As an "enforcer," Defendant Jones carried weapons and used force to protect the organization. *Id*. In contrast, the government recognizes that Mr. Smith was not a leader in the Pray Drug Conspiracy and committed no violent acts.

*Galaviz* also involved "a leader or organizer" in the relevant drug conspiracy. *Galaviz*, 183 F. Supp. 3d at 107. Moreover, Defendant Galaviz's applicable Guidelines range was 210 to 262 months but he was sentenced to the mandatory minimum of 180 months on each count, to run concurrently, a variance below the Guidelines. *Id*. at 108; *see also Galaviz II*, 892 F.3d at 380. After Amendments 782 and 788 were adopted, the reduced sentencing range for Defendant Galaviz was 168 to 210 months, so that his original sentence of 180 months was within the reduced Guidelines range. *Galaviz I*, 183 F. Supp. 3d at 108.

In this case, the nature and circumstances of the offense are serious and warranted a Guidelines sentence in 2011. Since the Commission had studied drug sentences for years before it reduced most drug offenses in the Guidelines, and since the Court is free to consider a reduction despite the 11(c)(1)(C) plea here, the Court finds that a modified sentence in line with the reduced Guidelines range is appropriate.

### B. The History and Characteristics of the Defendant

The government highlights Mr. Smith's five prior convictions, Gov't Mem. at 8, and prior failures while released on supervision or probation. *See id*. at n.2. In fact, Mr. Smith engaged in a continued pattern of criminal behavior, often committing his next crime while on supervision for the last. At the time of the instant offense, Mr. Smith was on supervised release in another case, following convictions for weapons and narcotics offenses. *Id*. at 2. Mr. Smith's

9

criminal conduct prior to and during the Pray Drug Conspiracy demonstrate a blatant disregard for the law and a lack of concern for the safety of his community.[5]

Today, after spending approximately nine years in prison, Mr. Smith is 40 years old. During his first few years in prison, Mr. Smith continued to demonstrate a lack of respect for the law and received disciplinary citations for possession of intoxicants, failure to obey orders, abusing the telephone, and assault. See Smith Mem. at 4; Gov't Mem. at 11-12; Gov't Ex. A, Mr. Smith Post-Sentencing Disciplinary History [Dkt. 601] at 16-21.[6, 7] However, since 2016, Mr. Smith has not received another disciplinary sanction and has instead demonstrated a desire to change his life. See Smith Mem. at 4. He has completed multiple courses offered as part of the Nonresidential Drug Abuse Program and other courses such as "Maximized Manhood" and "Road to Financial Success," which are aimed at teaching skills to become a productive member of society upon release. Id. at 3-4; see also Smith Ex. B, Certificates [Dkt. 602-2]. Mr. Smith is currently enrolled in the Residential Drug Abuse Program, demonstrating his continued commitment to remain drug-free. See Smith Mem. at 4.

In addition, Mr. Smith has been paying his quarterly fines and has begun considering how he will find employment upon his release. See Smith Ex. A, Letter from Mr. Smith [Dkt. 602-1] at 5 ("I will voluntarily place myself on 2 to 3 days of community services for at least 1 to 2 hours. . . . Plus, I've net working [sic] with different people out in the working

---

[5] The Presentence Report also notes that Mr. Smith was addicted to PCP at the time he committed the instant offense. See PSR ¶¶ 94-99.

[6] The page number references to Government Exhibit A are to the ECF page numbers.

[7] It is worth noting that a number of the disciplinary infractions highlighted by the government occurred *before* Mr. Smith's original sentencing, were evaluated in the PSR, and were taken into account when the parties negotiated Mr. Smith's plea agreement. See Reply at 1.

fields to obtain a job when I am released back to society.").[8]  The Court also reviewed the letters submitted in support of Mr. Smith, which demonstrate the supportive family he will be surrounded by upon his release.  *See* Smith Ex. A, Letters in Support [Dkt. 602-1] at 7-13.  Mr. Smith's sibling, Robin Ford, indicates that the family has built a small successful business, which Mr. Smith can join upon his release.  *Id*. at 7.  His uncle, Johnny McLean, was also a member of the Pray Drug Conspiracy.  Since completing his sentence, Mr. McLean has maintained consistent employment and writes in support of Mr. Smith to offer his commitment to helping his nephew adjust during his return to society.  *Id*. at 9.

Mr. Smith's criminal history, continued criminal conduct while under supervision, and significant PCP sales as part of the Pray Drug Conspiracy supported his initial sentence.  His more recent behavior shows distinct promise of the person he might be upon release.  The lack of disciplinary citations in the past three years, dedication to programing and drug treatment at the Bureau of Prisons, and strong support from his family favor a reduced Guidelines sentence.

### C.  The Sentencing Range Established by the Guidelines

The now-applicable Guidelines range is 120-150 months.

### D.  Pertinent Policy Statement from the Sentencing Commission

When the Sentencing Commission drafted Amendment 782, it indicated that the original offense levels for drug offenses were set above mandatory minimums so that federal judges could depart downward from the Guidelines without running afoul of mandatory minimums.  In proposing to reduce drug offense levels, the Commission indicated that its original drug offense levels did not fulfill that purpose.  *See* 79 Fed. Reg. 25,996 at 26,004, 2014 WL 1763099 ("The Commission determined that setting the base offense levels slightly above

---

[8] All page number references to Smith Exhibit A are to the ECF page numbers.

the mandatory minimum penalties is no longer necessary to achieve its stated purpose."). Considering the purposes of sentencing and the Sentencing Commission's policy statement associated with Amendment 782, the Court concludes that a reduced Guidelines sentence for Mr. Smith is reasonable and sufficient, but not greater than necessary.

### E. The Need to Avoid Unwarranted Sentence Disparities

The Court considers both the need to avoid unwarranted disparities between defendants involved in the same criminal conspiracy and unrelated defendants who commit similar crimes. As to Mr. Smith's co-defendants, the government emphasizes the wired nature of the plea of all trial co-defendants and argues that the nature of that plea necessitates denying Mr. Smith's motion for a sentencing reduction. This Court has previously denied sentence reductions to Messrs. Williams and Wade, two of Mr. Smith's trial co-defendants. *See* Order denying Wade Motion to Reduce Sentence [Dkt. 559]; Order denying Williams Motion to Reduce Sentence [Dkt. 557]. The third defendant whose plea was also wired to the trial group, Mr. McMillan, was released from custody prior to the adoption of Amendment 782. Because of the differences in the criminal conduct between Mr. Smith and his putative trial co-defendants, discussed above, the Court finds that a sentence reduction for Mr. Smith would not create an unwarranted sentencing disparity among them.

The need to avoid unwarranted sentence disparities among unrelated defendants charged with the same crime also weighs in favor of reducing Mr. Smith's sentence. The Sentencing Commission has established new and reduced sentencing ranges for most drug offenses. Upon further evaluation, it gave those reduced ranges retroactive effect. The basis for the Court's refusal to do so when Mr. Smith first asked for a sentence reduction turns out to have been based on a misreading of the statute. There is no current reason to refuse to reduce Mr.

Smith's sentence.  To the contrary, if the Court did not order a reduction, Mr. Smith would suffer an unwarranted disparity between his sentence and similarly-situated individuals.

Having considered the factors set forth in § 3553(a), the Court finds that a reduced sentence of 135 months' incarceration, the mid-point of the new Guidelines range, is "sufficient, but not greater than necessary" to accomplish the goals of sentencing.

### IV. CONCLUSION

For the foregoing reasons, Mr. Smith's motion for a reduction in sentence will be granted and the Court will enter an Amended Judgment of 135 months' incarceration, with credit for time served.  A memorializing Order accompanies this Memorandum Opinion.

Date: April 15, 2019

ROSEMARY M. COLLYER
United States District Judge